IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

|  |  |
|---|---|
| IN RE | ) |
| | ) |
| NON-FERROUS EXTRUSION, | ) CASE NO. 09-30267-H3-7 |
| & SCRAP METALS, INC. | ) |
| | ) |
| Debtor, | ) |
| | ) |

## MEMORANDUM OPINION

The court has held an evidentiary hearing on the "Disbursing Agent's Motion to (I) Reopen Case and (II) Compel Compliance with Chapter 11 Plan" (Docket No. 159). The following are the Findings of Fact and Conclusions of Law of the court. A separate Judgment will be entered granting the motion in part. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

### Findings of Fact

Non-Ferrous Extrusion & Scrap Metals, Inc. ("Debtor")[1] filed a voluntary petition under Chapter 11 of the Bankruptcy Code on January 13, 2009.

---

[1] The first and second plans involving this Debtor defined "Reorganized Debtor" to mean the Debtor after confirmation of the plan. Because the plan did not provide for creation of a new entity, the court uses the term "Debtor" in this opinion to address the Debtor's existence in both cases and thereafter.

Debtor's Chapter 11 plan in the instant case (Docket No. 144) was confirmed by order entered on March 30, 2010. (Docket No. 148).

Prior to the instant case, Debtor was also the Debtor in Case No. 03-42090-H4-11. In the first case, Debtor's plan was confirmed by order entered on May 18, 2004. (Docket No. 135, Case No. 03-42090-H4-11). The first case was closed on October 28, 2004. (Docket No. 246, Case No. 03-42090-H4-11).

The plan in the instant case provides in pertinent part:

> Class 5 consists of the allowed claim of the Unsecured Creditors from the Debtor's first Chapter 11 plan in the amount of approximately $321,500.00. The Class 5 creditor, J.A. Compton as disbursing agent from the first plan, shall be paid $6,500 on the Effective Date and $7,000 on the first day of each month thereafter for 45 consecutive months. On or about March of each calendar year beginning in 2011 and continuing through March 31, 2014, the Reorganized Debtor shall pay to the Disbursing Agent a sum of money equal to thirty percent (30%) of the Net Profit for the prior calendar year as determined by a Certified Public Accountant after a review of the financial statements of the Reorganized Debtor for the prior calendar year in accordance with Generally Accepted Accounting Principals. This amount shall also be disbursed to the holders of claims in Class 5. The Debtor agrees to ratify the Promissory Note and the Disbursing Services Agreement approved by the Order Confirming Third Amended Plan of Reorganization entered in Case Number 03-42090 on May 18, 2004, as modified by the foregoing.

(Docket No. 144).

The disbursing agent under Debtor's plan in the first case, Jeffrey Compton, who is himself a certified public

accountant, ("CPA") testified that there are three levels of service provided by a CPA regarding financial statements.  A CPA may compile the information from the client and prepare a "compiled" financial statement.  A CPA may review the financial statement in accordance with the Statement on Standards for Accounting and Review Services ("SSARS") published by the American Institute of Certified Public Accountants, and prepare a "reviewed" financial statement.  A CPA may produce "audited" financial statements.

Compton testified that, in order to prepare a reviewed financial statement in compliance with SSARS, a CPA must be "peer-reviewed."  He testified that, in order to be peer-reviewed, a CPA applies to the Texas Society of Certified Public Accountants, which administers the peer review program on behalf of the Texas State Board of Public Accountancy.  He testified that, every three years, a specifically approved reviewer reviews all the CPA's work on compilations, reviews, and audits, and either "passes" the CPA, or expresses concerns with the quality of the CPA's work.

Compton testified that the cost to have a CPA prepare a compiled financial statement is less than that to have a CPA prepare a reviewed financial statement, and that the cost to have a CPA prepare a reviewed financial statement is less than that to have a CPA prepare an audited financial statement.

Compton testified that he received reviewed financial statements from Debtor's CPA, Mervyn Blieden, for 2004 through 2006.  He testified that he has been unable to locate the reviewed financial statements for 2007 and 2008.

Blieden testified that, prior to 2008, he was peer-reviewed as a CPA.  He testified that he sold his previous firm during 2008, and allowed his peer-reviewed status to lapse.

Compton testified that he continued receiving financial statements from Blieden for 2010, 2011, 2012, and 2013.  He testified that the financial statements he received from Blieden were not reviewed financial statements.

Blieden testified that he continues to act as Debtor's CPA.  He testified that he has prepared tax returns for Debtor, but has not prepared or reviewed Debtor's financial statements.

Compton communicated with Blieden regarding the absence of a review report, by email sent on May 6, 2013.  Blieden responded, notifying Compton that the financial statements he had forwarded to Compton were "client prepared."  (Disbursing Agent's Exhibit 12).

Compton testified that he has concerns regarding the accuracy of the information contained in the financial statements forwarded to him by Blieden.  He testified that the amounts shown for income do not match the amounts reported to the Internal Revenue Service on Debtor's tax returns.

In the instant motion, Compton seeks entry of an order reopening the instant Chapter 11 case, and requiring that Debtor comply with the provisions of Section 4.1.5 of the confirmed plan by providing reviewed financial statements to Compton.  (Docket No. 159).  Debtor opposes the motion, asserting that the cost of preparing reviewed financial statements is prohibitive, and that Debtor would not have agreed to include the requirement for reviewed financial statements in the plan if it had realized the cost of doing so.  Debtor asserts that the cost of preparing reviewed financial statements is between $50,000 and $60,000 per year.  (Docket No. 160).

Compton testified that he believes the cost of preparing reviewed financial statements for an entity similar to Debtor would be between $20,000 and $25,000 per year.  Blieden testified that he believes the cost would average between $20,000 and $25,000 per year.  Blieden testified that the first year would be more expensive, and subsequent years would be less expensive, because the historical data added for the CPA's review would be augmented only by one year's data for each year after the historical data was captured in the initial year.

The order confirming the plan in the instant case provides in pertinent part:

> The Court shall, and hereby does, retain jurisdiction of this case for all of the purposes set forth in the Plan and for purposes provided in 11 U.S.C. §§ 1127(b) and 1142 and Bankruptcy Rule 3020(d).

(Docket No. 148).

Subsequent to the closing of the evidence with respect to the instant motion, the court directed Compton to supplement the record with the provisions of Generally Accepted Accounting Principles and SSARS on which he relied for his testimony. The court permitted Debtor to respond to Compton's supplement. (Docket No. 167).

In response to Compton's filing of SSARS No. 19 (Docket No. 169), Debtor contends that it has now submitted reviewed financial statements to Compton, and thus that the instant motion is moot. (Docket No. 170).

In light of the possible mootness of the instant motion, this court held a status hearing on April 14, 2015. At the status hearing, Compton's counsel stated that Compton had received financial statements that purported to have been reviewed by an accountant named Mr. Mack. Compton's counsel stated that he believes Mack is not peer-reviewed, because he believes Mack has entered the peer review program, but his work has not yet been accepted. Compton's counsel stated that the financial statements Compton received did not reflect any changes from the financial statements previously forwarded by Blieden.[2] Compton continues to take the position that, notwithstanding his

---

[2] None of the statements of Compton's counsel have been admitted as evidence.

receipt of financial statements (whether reviewed or not), the case should be reopened in order to allow investigation of discrepancies between the income shown on the financial statements and that shown on the tax returns.

## Conclusions of Law

Section 350(b) of the Bankruptcy Code provides:

> (b) A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.

11 U.S.C. § 350(b).

The bankruptcy court has jurisdiction to consider matters regarding implementation or execution of the plan.  This jurisdiction extends to matters that impact compliance with or completion of the reorganization plan.  In re Seven Seas Petroleum, Inc., 522 F.3d 575 (5th Cir. 2008).

Resolution of the instant motion depends in part on this court's interpretation of Section 4.1.5 of the plan.  That section requires net profit to be determined "after a review of the financial statements" of the Debtor.  Debtor contends that a review in the context of Section 4.1.5 does not mean that a reviewed financial statement is necessary.

Debtor has not offered an alternative construction of the phrase "after a review of the financial statements."  Debtor simply argues that the cost is prohibitive.  The court does not find this argument to be persuasive.

The court concludes that Section 4.1.5 of the confirmed plan requires that Debtor provide to Compton financial statements reviewed pursuant to SSARS by a peer-reviewed CPA firm.

A CPA must comply with SSARS when transmitting a client's financial statements to a third party.  Tex. Admin. Code § 501.63(a).

A CPA firm performing reviews is required to enroll and participate in the peer review program.  Tex. Admin. Code § 527.4(a).  See also SSARS No. 19, AR 90; and The Peer Review Program Overview, Texas State Board of Public Accountancy, available at https://www.tsbpa.state.tx.us/firms/peer-review.html (last visited 4/14/2015).

Section 527.4(c) of the Texas Administrative Code provides:

> (c) Each firm required to participate under subsection (a) of this section shall enroll in the applicable programs of an approved sponsoring organization within 12 months from its initial licensing date or the performance of services that require a review.  The firm shall adopt the review due date assigned by the sponsoring organization, and must notify the board of the peer review due date within 30 days of its assignment.  In addition, the firm shall schedule and begin an additional review within three years of the previous review's due date, or earlier as may be required by the sponsoring organization or a committee of the board.  It is the responsibility of the firm to anticipate its needs for review services in sufficient time to enable the reviewer to complete the review by the assigned review due date.

Tex. Admin. Code § 527.4(c).

The plain language of Section 527.4(c) allows a CPA to perform reviews after enrolling in the peer review program, prior to the first review by peers taking place. Thus, to the extent Mr. Mack may have been enrolled in the peer review program, and provided what purport to be reviewed financial statements to Compton (neither of which facts are currently in evidence), the court concludes that those financial statements comply with the requirements to be reviewed financial statements under SSARS and the Texas Administrative Code.

Notwithstanding the question of whether the financial statements purportedly provided by Mack are "reviewed," the discrepancy between income identified in the financial statements and that identified on Debtor's tax returns constitutes cause for reopening of the case. The court concludes that the case should be reopened, in order to allow Compton to seek appropriate relief if there has been a default in payments due under the plan.

Based on the foregoing, a separate Judgment will be entered granting in part the "Disbursing Agent's Motion to (I) Reopen Case and (II) Compel Compliance with Chapter 11 Plan" (Docket No. 159).

Signed at Houston, Texas on April 15, 2015.

_____
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE